**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| MOBILE TELECOMMUNICATIONS<br>TECHNOLOGIES, LLC, | §<br>§<br>§ | |
| Plaintiff, | §<br>§ | Civil Action No. 3:12-cv-1652-M |
| v. | §<br>§ | |
| BLACKBERRY CORPORATION, | §<br>§ | |
| Defendant. | §<br>§ | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

On April 27, 2016, the Court heard oral argument on a Motion for Partial Summary Judgment of Non-Infringement and Invalidity [Docket Entry #374], filed by Defendant BlackBerry Corporation ("BlackBerry"). As part of its Motion, BlackBerry argued that the asserted claims of two of the five patents-in-suit in this litigation, U.S. Patent No. 5,809,428 ("the '428 Patent"), and U.S. Patent No. 5,894,506 ("the '506 Patent"), are invalid under 35 U.S.C. §101. At the hearing, the Court granted BlackBerry's Motion with respect to the invalidity of claims 1 and 8 of the '428 Patent and claim 8 of the '506 Patent under § 101. This Memorandum Opinion and Order more fully sets forth the reasons for the Court's decision.

**Background**

On summary judgment, BlackBerry contends that all of the asserted claims of the '428 and '506 Patents are invalid for claiming patent-ineligible subject matter under § 101. More specifically, BlackBerry argues that claims 1 and 8 of the '428 Patent are directed to the abstract idea of sending and storing messages, and claim 8 of the '506 Patent is directed to the abstract idea of coded communication. BlackBerry further argues that nothing in any of the asserted

1

claims transforms these abstract ideas into something patentable. Plaintiff Mobile Telecommunications Technologies, LLC ("MTel") objects that BlackBerry has overgeneralized in characterizing the asserted claims as abstract ideas and further argues that, even if the claims are directed to abstract ideas, they are still patent eligible because the claims contain inventive concepts that implement novel solutions using specialized equipment and protocols.

**Legal Standards**

Section 101 provides that:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

35 U.S.C. §101.

In deciding *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) ("*Alice*"), the Supreme Court addressed a series of cases concerning the patent eligibility of software claims under § 101. *See Bilski v. Kappos*, 561 U.S. 593 (2010) ("*Bilski*"); *see also Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107 (2013) ("*Myriad*"); *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289 (2012) ("*Mayo*"). In *Alice*, the Court reiterated that the right of inventors to obtain patents, as codified in § 101, contains an implicit exception for laws of nature, natural phenomena, and abstract ideas. 134 S. Ct. at 2354 (citing *Myriad*, 133 S. Ct. at 2116).

In determining whether to apply this exception under § 101, courts "must distinguish between patents that claim the 'buildin[g] block[s]' of human ingenuity and those that integrate the building blocks into something more, thereby 'transform[ing]' them into a patent-eligible invention." *Alice*, 134 S. Ct. at 2354. To make that distinction, courts apply the two-step test originally articulated in *Mayo* and reaffirmed in *Alice*.

2

This test requires the Court to first "determine whether the claim[ ] at issue [is] directed to one of those patent-ineligible concepts," such as an abstract idea. *Id.* at 2355. If the challenged claim satisfies this "ineligible concept" step, the court must then "determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo*, 132 S. Ct. at 1296–97).

At the "inventive concept" step, the Court considers the elements of the claim both individually and "as an ordered combination" in order to determine if an element or combination of elements within the claims are "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* A claim may become patent-eligible when the "claimed [invention] include[s] . . . unconventional steps. . . that confine[ ] the claims to a particular, useful application of the principle." *Mayo*, 132 S. Ct. at 1300; *see also DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014) ("In particular, the '399 patent's claims address the problem of retaining website visitors that, if adhering to the routine, conventional functioning of Internet hyperlink protocol, would be instantly transported away from a host's website after 'clicking' on an advertisement and activating a hyperlink.").

### Analysis

*Patent-Ineligible Ideas*

Claims 1 and 8 of the '428 Patent are directed at utilizing a two-way communication network to process data messages that cannot be successfully transmitted from a network operations center ("NOC") to a mobile unit. *See* '428 Patent, 9:15-32 & 10:21-42; *see also id.* 7:15-57 & Fig. 6. Claim 8, for example, accomplishes the process by first sending a data

message from a NOC to the last known location of a mobile unit.[1] *Id.*, 10:25-26. If a data acknowledgment message is received, then the NOC sends out the next data message. *Id.*, 10:27-30. If no data acknowledgment message is received, then the NOC sends out probe messages to locate the mobile unit. *Id.*, 10:30-34. If a probe acknowledgment message is received, the NOC's memory will be updated with the mobile unit's location based on which base receiver acknowledged the probe. *See id.*, 7:40-64. If no acknowledgement message is received, then the NOC marks the message as undelivered and stores the message in the NOC's memory. *Id.*, 10:35-42.

Claim 8 of the '506 Patent describes an electronic messaging system that provides coded communications between messaging terminals. In particular, the claim recognizes that many paging messages consist of a relatively small number of common phrases. Thus, commonly used phrases can be treated as "canned" messages that can be replaced by short message codes. '506 Patent, 1:42-49. A key of canned messages and message codes is stored in both the terminal devices and the NOC. *See id.*, 9:59-66. This allows a user to select a canned message and for the associated message code to be sent through the communications network to the mobile device. *Id.*, 10:1-8. When the mobile device receives the message code, then the corresponding canned message will be displayed to the user. *Id.*, 10:9-12.

The Court determines that the asserted claims of the '428 Patent are directed to the basic idea of sending and storing messages, which is not rooted in computer technology. As demonstrated by BlackBerry's hypothetical, the idea claimed by claim 8 of the '428 Patent is

---

[1] The Court does not separately analyze claim 1 of the '428 Patent because MTel's expert opined that the elements of claim 8 are analogous to those of claim 1, *see* Def. App. at 582, and because the Federal Circuit has held it is permissible to assess representative claims when conducting a § 101 inquiry. *See Ultamercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 712 (Fed. Cir. 2014).

directed to a routine task that could be performed by a human. The hypothetical imagines a courier attempting to deliver a package using the following steps:

> (a)    a courier tries to deliver a package to a person's house;
>
> (b)    if the person accepts delivery of the package, then the courier is informed that the package has been delivered;
>
> (c)    if the person does not answer, then the courier tries to determine the person's current location by knocking on the back door, going to the person's work, or other places the person is known to visit;
>
> (d)    if the person still does not answer, the courier marks the package to be stored in the undelivered mail bin; and
>
> (e)    the courier then stores the undelivered package in the undelivered mail bin.

The idea of sending and storing messages as described in the '428 Patent is an abstract idea that is not patent eligible. *See Eclipse IP v. McKinley Equip.*, 2014 WL 4407592, at *11 (C.D. Cal. Sept. 4, 2014) (patent claims that describe "asking someone to do a task, getting an affirmative response, and then waiting until the task is done" are directed to abstract ideas); *see also eDekka LLC v. 3Balls.com, Inc.*, 2015 WL 5579840, at *3 (E.D. Tex. Sept. 21, 2015) (same as to patent claims that describe "receiving, labeling, and storing information").

The Court further determines that claim 8 of the '506 Patent is directed to a method for effectuating the abstract concept of coded communication. BlackBerry's hypothetical of coded battlefield communications shows how the method of claim 8 of the '506 Patent could be performed by a human:

> (a)    a battlefield operations center has a lookup table that contains messages and their associated codes;
>
> (b)    two soldiers—soldier A and soldier B—each have a lookup table that contains messages and their associated codes;

      (c)     soldier A wants to send a coded message to soldier B and thus selects a message from his lookup table;

      (d)     soldier A determines the message code assigned to the selected message and sends the code using a message carrier to the battlefield operations center;

      (e)     battlefield operations center relays the message code to soldier B;

      (f)     soldier B uses the received message code and his lookup table to retrieve the message that soldier A sent; and

      (g)     soldier B looks at the retrieved message.

The practice of communicating using codes has been in existence for a long time. Coded communication is an abstract idea that is not patent eligible. *See, e.g., OpenTV v. Apple*, 2015 WL 1535328, at * 3 (N.D. Cal. Apr. 6, 2015) (finding claims that described compiling, organizing, and transmitting information, using identification codes as shorthand for that information, were directed to abstract ideas).

      The Court further notes that Greg Pinter, the inventor of the '506 Patent, testified in a different case, *Mobile Telecommunications Technologies, LLC., v. Samsung*, Case No. 2:13-cv-259 (E.D. Tex.), that the concept of claim 8 is similar to the concept of stenography:

      A.     … In the general nature of the '506 patent is a method by which you communicate from one device to the other efficiently. So, in other words, instead of just sending a message that may be 20 characters long, my patent translated that to a single code. We would send that code over to another device, and that device would look up in the table, find the message that was sent over here, and display the same message. So instead of maybe 20 characters going over, we would be sending 1 character over. And on the other end, it would reconstruct that to another -- back to the 20 characters that were there. So effectively, we would have a – an efficiency of, you know, 20 to 1. So instead of 1 large message going over, we could send 20 messages going over in equivalent space.

      Q. So -- and that's one of the ideas that helped make MTel's 2Way network more efficient?

6

A. That's correct.

Q. Do you know what shorthand is? Do you know what that term is, shorthand?

A. Yes, I think so.

Q. Describe for the jury what shorthand is.

A. Shorthand is a way -- a way of compressing, if you will, instead of a long set of -- set of -- a long sentence, you can write it in shorthand. You'd say -- and it would be short, little character stream.

Q. And shorthand is kind of what the court reporter uses to take down all this testimony so she can do it more efficiently?

A. Exactly.

Q. And so is shorthand -- is that a fair characterization of kind of something that your patent was trying to do with wireless messaging, create kind of a shorthand for it?

A. Sure. That's a way you could characterize it, yes.

Def. App. at 0685-86. This evidence further confirms that the asserted claim of the '506 Patent is directed to a longstanding, well-known practice, rather than a patent-eligible idea.

MTel contends that BlackBerry has overgeneralized in characterizing the asserted claims as an abstract idea. But, generalization is not improper. "[C]ourts should recite a claim's purpose at a reasonably high level of generality." *Network Apparel Group, LP v. Airwave Networks Inc.,* 2015 WL 9661571, at *7 (W.D. Tex. Dec. 30, 2015). Here, the asserted claims of the '428 Patent are directed to the abstract idea of sending and storing messages, and claim 8 of the '506 Patent is directed to the abstract idea of coded communications.  Neither of these abstract ideas is patent-eligible without "something more." *Alice*, 134 S. Ct. at 2354.

*Inventive Concepts*

Because the claims are directed to abstract ideas, the Court must examine the elements of the claims to determine whether they contain an "inventive concept" sufficient to transform the claimed abstract idea into a patent-eligible application. *See Alice*, 134 S. Ct. at 2357.

The '428 Patent employs a NOC and "mobile units" to carry out the steps of sending and storing messages. However, the NOC and mobile units are generic computer hardware components. These computer components, whether considered individually or in combination with each other, do not add something significantly more as required to transform the abstract idea of sending and storing messages into a patent-eligible invention. *See, e.g., Mobile Telecommunications Techns., LLC v. United Parcel Serv., Inc.*, 2016 WL 1171191, at *7 (N.D. Ga. Mar. 24, 2016) (holding that "paging operations center" and "wireless page messages" insufficient to transform patent's abstract idea of providing delivery notification for express packages into patent-eligible concept). The '506 Patent similarly utilizes generic computer components to perform the abstract idea of coded communication. Claim 8 of the '506 Patent recites a generic NOC and remote terminals that store, send, and receive messages. None of these components add an inventive concept. Even examining the components in combination does not add an inventive concept. *Mayo*, 132 S. Ct. at 1298; *Morales v. Square, Inc.*, 75 F. Supp. 3d 716, 725 (W.D. Tex. 2014) (holding that inclusion of a "response unit," a "local area repeater," and a "data center"—all of which consist of generic hardware—in the process described by asserted claim is not an inventive concept sufficient to transform an abstract idea into a patentable claim).

MTel does not try to establish that the claims of the challenged patents are tied to specialized computer components rather than a generic NOC and mobile units. Instead, MTel

argues that the asserted claims of the '428 and '506 Patents are still patentable because they claim a new and useful process for communication. According to MTel, claims 1 and 8 of the '428 Patent proposed a novel solution to the problem of losing data messages when an initial delivery attempt fails, by sending a probe message which saves capacity. Similarly, MTel argues claim 8 of the '506 Patent offered a new solution to a problem encountered on wireless networks by transmitting compressed messages. However, the "novelty" of the claimed invention is not the proper focus of the § 101 inquiry. *Diamond v. Diehr*, 450 U.S. 175, 188-89 (1981) ("The 'novelty' of any element or steps in a process, or even of the process itself, is of no relevance in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter."); *see also Source Search Techn., LLC v. Kayak Software Corp.*, 111 F. Supp. 3d 603, 611 (D. N.J. 2015) (describing the appropriate inquiry at step two of the *Alice* analysis as "whether the [claimed invention] qualifies as an inventive concept, not merely a novel one"); *IpLearn, LLC v. K12 Inc.*, 76 F. Supp. 3d 525, 534 (D. Del. 2014) ("A new idea, i.e., one that is non-anticipated and non-obvious, does not, however, make an abstract idea patent eligible."). The fact that MTel's predecessor-in-interest with respect to the patent-in-suit might have been the first to successfully implement the concepts of the asserted claims within the context of a two-way wireless messaging service that utilizes a NOC does not transform the abstract ideas into something patentable. *OpenTV*, 2015 WL 1535328, at *6.

MTel also attempts to analogize its patents to those held patentable by the Federal Circuit in *DDR Holdings, LLC v. Hotels.com, L.P.* by arguing that the patents address a needed improvement in electronic messaging technology, which cannot be accomplished solely with human activity. However, *DDR Holdings* does not save the asserted claims of the '428 or '506

Patent. The asserted claims do not solve problems specifically arising in the realm of computer networks, and technology did not create the problems addressed. Further, unlike *DDR Holdings*, the asserted claims do not specify how interactions with the two-way wireless network are manipulated to yield a desired result. Claim 8 of the '428 Patent does not limit how the messages are marked or limit the structure of the modules in the NOC or the mobile units. Claim 8 of the '506 Patent does not limit how a message is sent or received, nor does it specify the structure of the canned message, the structure of the message code, or the NOC's role in sending or receiving messages. MTel has failed to identify a sufficient inventive concept contained within the asserted claims of the '428 and '506 Patents to support the conclusion that they are not invalid.

### Conclusion

BlackBerry's Motion for Partial Summary Judgment of Non-Infringement and Invalidity [Docket Entry #374] is GRANTED in part. The Court finds that claims 1 and 8 of U.S. Patent No. 5,809,428 and claim 8 of the U.S. Patent No. 5,894,506 are invalid under 35 U.S.C. §101.

The remainder of BlackBerry's Motion is still under advisement.

SO ORDERED.

Dated: May 12, 2016.

BARBARA M. G. LYNN
CHIEF JUDGE